# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**TEXTRON FINANCIAL CORPORATION,**

        **Plaintiff,**

**-vs-**                            **Case No.  6:10-cv-799-Orl-28DAB**

**TOPLINE APPLIANCE DEPOT, INC;**
**ROBERT P. BARNAS, II; REBECCA A.**
**BARNAS; ROBERT A. SCHENK; and**
**CHERYL L. SCHENK,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This cause came on for consideration without oral argument on the following motion filed

herein:

> **MOTION:**    **MOTION FOR DEFAULT JUDGMENT (Doc. No. 17)**
>
> **FILED:**      **July 30, 2010**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

      Plaintiff Textron Financial Corporation sued Defendants for breach of contract on a credit and

security agreement, and four personal guaranties.  Doc. 1.  Following service of process on the

corporate Defendant Topline Appliance Depot, Inc. (via the corporate president Robert Schenk), and

personally on all four guarantors Robert and Rebecca Barnas, and Robert and Cheryl Schenk[1] (the

"Guarantors") (*see* Docs. 8-12), all of the Defendants failed to appear and Textron moved for entry

of a clerk's default against them on June 30, 2010 (Doc. 13).  A default was entered by the Clerk on

_____

[1]Amended returns of service for Rebecca Barnas and Cheryl Schenk, who were served through their spouses
pursuant to Fla. Stat. § 48.031(2)(a), were filed on July 29, 2010.  Doc. 16.

July 1, 2010. (Doc. 14).  Textron now moves for a default judgment against the Defendants and has filed a supporting Affidavit of Larry Frye (Doc. 18); the matter is now ripe for resolution.

**Analysis**

Textron moves for default judgment on its claims for breach of contract under the Credit and Security Agreement and the personal guaranties of the individual Defendants.  Textron contends that it is entitled to recover $212,961.08 for sold and unpaid collateral, $35,614.20 for the deficiency due under the Security Agreement after disposition of the inventory recovered by Textron, plus past due interest in the amount of $14,493.10 as of July 13, 2010, for a total indebtedness of $263,068.38, plus interest that continues to accrue in the per diem amount of $122.74 at the default rate of eighteen (18%) per annum. Doc. 1 ¶¶ 19, 21; Doc. 18, Frye Aff. (Aff. Of Indebtedness) ¶¶ 13, 15-16.

 The Court finds that Defendants' failure to timely respond to the Complaint and subsequent entry of default served to admit the well pled allegations of the Complaint.  *See, e.g.*, *Cotton v. Mass. Mut. Life Insurance Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (in defaulting, defendants "admit the plaintiff's well-pleaded allegations of fact"); *Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987) (same).

A.  *Breach of Contract against Topline Appliance Depot, Inc.*

On July 25, 2007, Topline entered into a Credit and Security Agreement with Textron (the "Security Agreement"). Doc. 1 ¶ 9, Doc. 1-1.  On May 5, 2010, Textron notified Topline and the Guarantors that they were in default pursuant to the Security Agreement by failing to remit payment to Textron upon the sale of certain items of Collateral and further defaulted by failing to make timely payments of principal and interest when due pursuant to the Security Agreement. Doc. 1 ¶¶ 8, 18. Textron was unable to recover several items of inventory from Topline because such inventory was sold and unpaid Collateral ("SAU Collateral"), *i.e.*, had been sold by Topline without remitting payment to Textron in accord with the terms of the Security Agreement. Doc. 1 ¶¶ 17-19; Doc. 18 ¶

14. The principal amount sought by Textron for the SAU Collateral is $212,961.08. See Doc. 1 ¶ 19; Dc. 18 ¶ 15.

The Security Agreement provides that in the event of default, Textron "shall have all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws." Doc. 1-1, Security Agreement ¶ 11.  Pursuant to the Security Agreement, Rhode Island law governs the Security Agreement between the parties (Doc. 1-1 ¶ 16); Rhode Island has adopted the Uniform Commercial Code.  R.I. Gen. Laws § 6A-9.  Pursuant to the Uniform Commercial Code ("UCC"), after default, a secured party may take possession of the collateral securing the debt it is owed and sell, lease, license, or otherwise dispose of such collateral. *See* R.I Gen. Laws §§ 6A-9-609, 6A-9-610.3.  After selling the collateral in a commercially reasonable manner, the secured party is entitled to any deficiency between the amount owed by the debtor and the amount recovered from the sale of collateral. *See* R.I. Gen. Laws § 6A-9-608.

The notices of sale required by the UCC were sent to Defendants and all other necessary parties. Doc. 18, Frye Aff. ¶ 10 & Comp. Ex. 3; R.I. Gen. Laws § 6A-9-611. After liquidation of the Collateral, the principal balance owed on the inventory recovered through Textron's repossession was $35,614.20.  Doc. 18 ¶¶ 9, 13 & 3. Disposition of the Collateral was commercially reasonable, and Defendants have failed to file any responsive pleadings placing the issue of commercial reasonableness into question. See Doc. 1, ¶ 23; R.I. Gen. Laws § 6A-9-626(a)(1) (providing that "[a] secured party need not prove compliance with the provisions . . . relating to collection, enforcement, disposition, or acceptance," including the requirement of commercial reasonableness, "unless the debtor or a secondary obligor places the secured party's compliance in issue").

Topline defaulted pursuant to the Security Agreement by failing to remit payment to Textron for the SAU Collateral and by failing to make payments of principal and interest when due. See Doc. 1 ¶ 18; Doc. 1-1 ¶ 10; Doc. 18.  The Security Agreement provides that the financing terms, including

interest, are set forth in Statements of Financial Transaction ("SOFTs") furnished to Topline for each item of inventory financed.  Doc. 1-1 ¶ 13; Doc. 18.  As set forth in the Affidavit of Indebtedness, each of the SOFTs specify a default interest rate of eighteen percent (18%) per annum. See Doc. 18 ¶ 12 & Comp. Ex. 4. The interest due and unpaid as of July 13, 2010 was $14,493.10, plus interest accruing at the per diem amount of $122.74 at the default rate of eighteen percent (18%) per annum. See *id.* ¶ 16.

| | |
|---|---|
| SAU Collateral | $212,961.08 |
| Principal amount of deficiency | $35,614.20 |
| Interest through 7/13/2010[2] at the rate of 18% per annum, accruing at the per diem amount of $122.74 | $14,493.10 |
| TOTAL: | $263,068.38 |

   B.  *Breach of contract against the Guarantors*

   Robert Schenk, Cheryl Schenk, Robert Barnas, and Rebecca Barnas (the "Guarantors") each executed personal Guaranties to Textron and each guarantor was responsible for the obligations owed by Topline. Doc. 1 ¶¶ 10-11, 27-29, 31-33, 35-37, 39-41 & Doc. 1-2, 1-3.  Pursuant to the terms of the personal Guaranties executed by each of the Guarantors, each of the Guarantors is obligated to Textron for all sums due and owing by Topline for the SAU Collateral, for the deficiency due on the items of inventory recovered and sold, and for the interest due and owing by Topline. *See id.*

**CONCLUSION**

   Having reviewed the record in the case, it is respectfully **RECOMMENDED** that default final judgment[3] be entered in Textron's favor against Defendants Topline, and the Guarantors Robert

---

   [2]The calculation of interest may need to be adjusted for the additional months that have passed.

   [3]Textron states that although it is also entitled to the resale and repossession expenses, reasonable attorneys' fees, and costs incurred as a result of Topline's default pursuant to Paragraph 11 of the Security Agreement and the Guaranties, it has elected not to expend the time and money necessary to fully document its resale and repossession expenses, attorneys' fees, and costs, which are relatively small in relation to the debt owed.  Doc. 17.

Schenk, Cheryl Schenk, Robert Barnas, and Rebecca Barnas, jointly and severally, for the principal

amount of $212,961.08 for the SAU Collateral.  Textron is also entitled to default final judgment

against Topline, RASchenk, CL-Schenk, RP-Barnas, and RA-Barnas, jointly and severally, for the

principal amount of $35,614.20 for the deficiency due on the items of inventory recovered and sold.

Textron is also entitled to default final judgment against Topline, RA-Schenk, CL-Schenk, RP-Barnas,

and RA-Barnas, jointly and severally, for unpaid interest in the amount of $14,493.10 as of July 13,

2010.  Textron is **DIRECTED** to submit a proposed final judgment with the current calculation of

interest within 7 days of the date of this Order.

Failure to file written objections to the proposed findings and recommendations contained in

this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from

attacking the factual findings on appeal.

Recommended in Orlando, Florida on October 12, 2010.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy